IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 21, 2009 Session

## BRYAN GIBSON v. DAWNE JONES

Direct Appeal from the Chancery Court for Shelby County
No. CH-06-0488-2    Arnold B. Goldin, Chancellor

No. W2008-00042-COA-R3-CV - Filed February 25, 2009

This appeal involves a claim for specific performance of a land sale contract. Plaintiff made partial payments towards the purchase price for several months after the agreement was reached. In 2005, however, the relationship between the Plaintiff and Defendant deteriorated, and the Plaintiff stopped making payments. Defendant then informed the Plaintiff that the agreement was cancelled and began looking for another buyer. After the presentation of Plaintiff's proof, the trial court found that Plaintiff was unable to perform under the agreement within a reasonable time. The trial court also found that the agreement expressly permitted the Defendant to cancel the agreement in the event of Plaintiff's non-performance. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Larry A. Weissman, Memphis, TN, for Appellant, Bryan Gibson

William M. Jeter, Memphis, TN, for Appellee, Dawne Jones

### MEMORANDUM OPINION[1]

---

[1]Rule 10 (Court of Appeals). *Memorandum Opinion.* This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any subsequent unrelated case.

Background

The parties to this appeal, Appellant Bryan Gibson and Appellee Dawne Jones, are siblings. In July 2003, Ms. Jones agreed to sell Mr. Gibson 87 acres of land in Shelby County, Tennessee for the sum of $250,000. The initial agreement was reached orally but was subsequently confirmed by a document signed by both parties. The document provides, in its entirety, the following:

> On this day stated above [July 21, 2003], Bryan Gibson gives Dawne Jones a deposit of $6,000, Check #12466 for a down payment for the purchase of 87 acres of land located on Stewart Road in Arlington, Tennessee. The down payment is refundable in full to Bryan Gibson for any reason either party does not fulfill the selling and/or purchasing of the land with contract between Dawne Jones, owner and Bryan Gibson, buyer. Due to pending circumstances: appraisal, and freeing of the title.

Appellant introduced several other documents that described the manner of payment. The first, a document signed by both parties on September 16, 2004, was a receipt describing a payment made by Appellant. It states:

> On September 16, 2004, Bryan Gibson gives Dawne Jones a payment of $2,000.00, Check # 13893 for a payment for the purchase of 87 acres of land located on Stewart Road in Arlington, Tennessee. Dawne Jones agrees to sell land for $250,000. As of this date, $50,400 has been paid. The balance for land is $199,600.

Additionally, Mr. Gibson introduced an exhibit which consists of a description of several payments that he made to Ms. Jones toward the purchase price of the land from July 21, 2003 to December 15, 2005, totaling $92,191.25.

The payments were sporadic and varied in amount. Mr. Gibson paid $2,500 a month from July 2004 until May 2005. In the summer of 2005, the precise date is unclear, he paid $17,000 towards the purchase price of the land. Ms. Jones requested the increased payment in order to avoid foreclosure on her home. Throughout the summer of 2005, Ms. Jones made it clear to Mr. Gibson that she needed him to pay the remaining balance in order to complete the sale. Mr. Gibson, however, was having financial troubles of his own and was unable to get a loan.

Mr. Gibson's next payment, in December 2005, was in the amount of $12,481.25–again made so that Ms. Jones could avoid foreclosure on her home. The December payment, however, was apparently intended as a loan to Ms. Jones. Mr. Gibson testified that she had promised to pay this amount back to him the day after it was paid to her. Appellee did not pay Appellant back, and their

relationship quickly soured.[2]   Mr. Gibson stopped making regular payments and ended his efforts to acquire financing.

On February 10, 2006, Ms. Jones sent Mr. Gibson a letter explaining that on January 10, 2006, she had given him thirty days to close on the land.  Because he had not made additional payments, Ms. Jones stated her intention to sell the property to Memphis Light, Gas and Water ("MLGW").  MLGW was planning to institute an eminent domain proceeding in order to purchase five acres of the land for a substation.  MLGW also offered to purchase the land in full.  On February 20, 2006, Mr. Gibson responded that he wanted to purchase the land "regardless of what easement MLGW has."  He also denied that she had "notified [him] on January 10, 2006 that [he] had 30 days to close the purchase of the land."

On March 10, 2006, Mr. Gibson filed a Complaint in Shelby County Chancery Court seeking specific performance of the land sale agreement and an injunction to prevent Ms. Jones from selling the property.[3]  A non-jury trial was held on March 13, 2007.  At the close of Mr. Gibson's proof, Ms. Jones made an oral motion for involuntary dismissal pursuant to Tennessee Rule of Civil Procedure 41.02.  The trial court granted the motion, and in its Order of Dismissal, stated that Mr. Gibson "failed to make out a prima facie case for specific performance as it would relate to the cause of action associated with the land."  In its statements at trial, the trial court reasoned that Mr. Gibson did not have the ability to perform under the contract and could not make a full payment within a reasonable time.  Accordingly, the trial court required Ms. Jones to refund a portion of the payments made to Mr. Gibson.

Mr. Gibson appeals and raises five issues, as stated in his brief, for review:

1) Did the Chancery Court abuse its discretion by applying improper legal standards and thus failing to recognize the parties formed a valid installment contract for the sale of land?
2) Did the Chancery Court abuse its discretion by applying the statute of frauds against Mr. Gibson?
3) Did the Chancery Court abuse its discretion by failing to recognize that the statute of frauds may be satisfied by a group of writings, such as those proven here by Mr. Gibson?
4) Did the Chancery Court also abuse its discretion by failing to apply the doctrine of equitable conversion and enforce the parties' agreement on this basis?

---

[2]Mr. Gibson also owed Ms. Jones money from a previous loan in addition to the amount owed under the land sale agreement.  These liabilities were relevant to the trial court's decision as to the proper remedy but are not at issue on appeal.

[3]Mr. Gibson also sought damages related to a separate agreement between the parties involving the sale of a vehicle.  The trial court dismissed this claim, and Mr. Gibson has not raised the issue on appeal.

5) Did the Chancery Court abuse its discretion in failing to recognize that upon proof of a valid sales contract between Mr. Gibson and Ms. Jones, ownership passed to Mr. Gibson, along with the equity of redemption?

Ms. Jones, in her brief, restates the issue: whether the Chancery Court was correct in holding that the agreement between these parties was a simple contingency contract of sale and not performed within a reasonable time.

## Standard of Review

The standard for granting an involuntary dismissal is well settled:

> [W]hen a motion to dismiss is made at the close of plaintiff's case under Rule 41.02(2), the trial judge must impartially weigh and evaluate the evidence in the same manner as though he were making findings of fact at the conclusion of all of the evidence for both parties, determine the facts of the case, apply the law to those facts, and, if the plaintiff's case has not been made out by a preponderance of the evidence, a judgment may be rendered against the plaintiff on the merits, or, the trial judge, in his discretion, may decline to render judgment until the close of all the evidence. The action should be dismissed if on the facts found and the applicable law the plaintiff has shown no right to relief.

*City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977); see also, *Thompson v. Hensley*, 136 S.W.3d 925, 929 (Tenn. Ct. App. 2003). On appeal, the trial court's factual findings are presumed correct unless the evidence preponderates against them. Tenn. R. App. P. 13(d). The trial court's legal conclusions are reviewed *de novo* with no presumption of correctness. *Thompson*, 136 S.W.3d at 929.

## Law and Analysis

A. Mr. Gibson's Claim for Specific Performance

We first address Mr. Gibson's two issues involving the statute of frauds. Mr. Gibson correctly points out that Ms. Jones did not raise the statute of frauds as a defense. Next, Mr. Gibson claims that the trial court "raised *sua sponte* objections premised on the statute of frauds, asserting that the parties' agreement must be in writing...." Mr. Gibson argues that the trial court's statements were improper and that the parties' agreement satisfied the statute of frauds.

The statute of frauds does cover contracts for the sale of land. Tenn. Code Ann. § 29-2-101(a)(4); *GRW Enterprises, Inc. v. Davis*, 797 S.W.2d 606, 611 (Tenn. Ct. App. 1990). The trial court, however, found that the agreement here, as documented by several memoranda signed by the parties, was valid and enforceable. Mr. Gibson was not entitled to specific performance because he

failed to fulfill his obligations under the contract within a reasonable time. The statute of frauds had nothing to do with it. This issue is without merit.

Mr. Gibson next asserts that the trial court should have found that the parties' agreement was an installment contract. Mr. Gibson does not cite any law in support of this proposition beyond the conclusory assertion that the parties orally agreed to payment in monthly installments. There is no evidence in the record, however, to support Mr. Gibson's assertion. The parties did not describe the method of payment in writing, and the trial exhibits do not reveal a clear method of payment. Mr. Gibson's actual payments were highly inconsistent in both time and amount. In short, neither the language of the agreement nor the actions of the parties indicate a specific time for performance.

In contracts for the sale of land, "[t]ime is generally not of the essence 'in the absence of an express stipulation, a manifestation of intention from the contract or subject matter involved, or an implication from the nature of the contract or circumstances of the case.'" *Hillard v. Franklin*, 41 S.W.3d 106, 113 (Tenn. Ct. App. 2000) (quoting *Commerce Street Co. v. Goodyear Tire & Rubber Co.*, 215 S.W.2d 4, 11 (Tenn. Ct. App. 1948). In the present case, however, Ms. Jones frequently demanded that Mr. Gibson make full payment immediately. Accordingly, the trial court grafted onto the agreement a requirement that performance (i.e., payment) be made within a reasonable time. Tennessee courts have approved this method:

> Where no provision is made in the contract for performance, a reasonable time is implied. Completion of a contract within a reasonable time is sufficient if no time is stipulated. Where the parties have not clearly expressed the duration of the contract, or where the duration of the contract is indefinite, the courts will imply that they intended performance to continue for a reasonable time.

*Minor v. Minor*, 863 S.W.2d 51, 54 (Tenn. Ct. App. 1993). Following this rule, the trial court found that Ms. Jones had the authority to demand that Mr. Gibson make full payment in January 2006. Furthermore, the July 2003 document allowed either party to rescind the agreement "for any reason either party does not fulfill the selling and/or purchasing of the land." We agree with the trial court's conclusion. Mr. Gibson had not closed on the land or obtained financing to make full payment. Accordingly, Ms. Jones had the authority to void the agreement and look for other potential buyers.

Mr. Gibson also asserts that the trial court erred by not applying the doctrine of equitable conversion to enforce the agreement. Tennessee courts have defined the doctrine as follows:

> [T]he general rule is stated that a contract for the sale of land operates as an equitable conversion and the vendee's interest under the contract becomes realty and the vendor's interest becomes personalty, and in equity the vendee is regarded as the owner, subject to liability for the unpaid price, and the vendor is regarded as holding only the legal title in trust for the vendee from the time a valid contract for the purchase of land is entered into.

***Campbell v. Miller***, 562 S.W.2d 827, 831-32 (Tenn. Ct. App. 1977). The doctrine, however, does not compel specific enforcement of a land sale contract. It applies only "when there is a specifically enforceable agreement between the parties." ***Steele v. Rosenfeld, LLC***, 936 So.2d 488, 493 (Ala. 2005). Here, the trial court found that the agreement is not specifically enforceable. Accordingly, the doctrine does not apply and the issue is without merit.

Finally, Mr. Gibson asks that we apply the doctrine of equitable redemption to find that ownership of the property passed to him. Although it does not appear that Mr. Gibson raised this issue at trial, we will briefly address his claim. Mr. Gibson relies heavily on ***Peterson v. Hartell***, 707 P.2d 232 (Cal. 1985), in which the California Court Supreme reached the following conclusion:

> [A] vendee who has made substantial payments on a land installment sale contract or substantial improvements on the property, and whose defaults, albeit wilful, consist solely of failure to pay further amounts due, has an unconditional right to a reasonable opportunity to complete the purchase by paying the entire remaining balance plus damages before the seller is allowed to quiet title.

***Id***. at 240. The agreement, here, is not an installment contract, and the amount of money that Mr. Gibson has paid is irrelevant. The contract allowed Ms. Jones to terminate the agreement if Mr. Gibson could not complete the purchase. Accordingly, the trial court properly found that specific performance was an inappropriate remedy.

B.  Motion for Damages for Frivolous Appeal

On appeal, Ms. Jones asks to be awarded damages, including, but not limited to, costs and fees associated with this appeal, on the ground that it is frivolous. By statute, Tennessee permits an appellate court to award such damages:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. An appeal is frivolous when it is "so utterly devoid of merit as to justify the imposition of a penalty." ***Combustion Eng'g, Inc. v. Kennedy***, 562 S.W.2d 202, 205 (Tenn. 1978). Our decision on this issue is discretionary, and we are generally reluctant to award such damages so as not to discourage legitimate appeals. ***Whalum v. Marshall***, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006).

Exercising this discretion, we deny Ms. Jones's motion. The primary indicator that an appeal is frivolous is when the appealing party fails to cite a rule of law or evidence entitling the party to relief. ***Jackson v. Aldridge***, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999). Although we were often

perplexed and ultimately unpersuaded by Mr. Gibson's argument, his appellate brief cited proper authority and followed the typical conventions of legal argument. His appeal is unsuccessful but not frivolous.

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed against the Appellant, Bryan Gibson and his surety.


_____
J. STEVEN STAFFORD, J.